UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
11-CV-1520 (DWF/JSM)

James Keten and Aisha Keten,
individually and o/b/o minor
child K.K.K.,

               Plaintiffs,               **SECOND AMENDED COMPLAINT**

v.

                                                JURY TRIAL DEMANDED

Sergeants Steven Mosey,
Mark Osland and Kendal Chambers,
and Officers Aaron Morrison,
Chad Fuchs, Steven Lynch,
Todd Babekuhl, Lucas Peterson,
Scott Creighton, Chris Garbisch,
Nick Rowe, Mark Kaspszak,
Joshua Rick, Peter Rud,
George Peltz, and Mark Beaupre, in their
individual and official capacities,
and the City of Minneapolis,

               Defendants.

Plaintiffs, James and Aisha Keten, individually and on behalf of their minor child, K.K.K., state and allege as follows:

1. This is an action for money damages for injuries sustained by Plaintiffs as a result of the violations of their constitutional rights by the above-mentioned on-duty Police Officers ("Defendants"). The conduct of the Defendants violated Plaintiffs' well-settled civil rights while acting under the color of state law. Defendants' conduct also violated the common laws of the State of Minnesota.

1

2. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. §§ 1331 and 1343(3).

## PARTIES AND VENUE

3. Because all of the facts complained of arose in Minneapolis, Hennepin County, Minnesota, this action properly lies in the District of Minnesota.

4. At all times relevant to this action, Plaintiffs were and are citizens of the United States and residents of Hennepin County, Minnesota. Plaintiffs James and Aisha Keten are of the age of majority. At all times relevant to this action, Defendants were duly appointed police officers of the City of Minneapolis.

## FACTUAL ALLEGATIONS

5. At all times relevant to this lawsuit, Plaintiffs Mr. and Mrs. Keten were tenants of the lower level of a home located at 2504 Humboldt Avenue North, #1, Minneapolis, Minnesota.

6. On the morning of April 13, 2011, Mr. and Mrs. Keten were at home with their two daughters, K.K.K. and N.Z.K., as well as their four dogs.

7. K.K.K. was in the kitchen eating breakfast while Mrs. Keten got ready for work. N.Z.K. was elsewhere in the home. Mrs. Keten had recently let one of the dogs outside, so the front door was unlocked.

8. Defendants, who were at the Keten's home to execute a search warrant, barged through the Keten's front door without warning and began firing their 9mm handguns. Defendants did not "knock and announce," as required under the warrant, nor did they give any warning that they were entering the Keten family's home.

9. One of the Keten's dogs, Kano, was laying in the front living room when Defendants entered. Before the dog had time to stand up, Defendant Morrison shot and killed the dog, splattering blood all over the children's "Dora the Explorer" book that sat nearby. Kano did not bark nor did he display any aggression towards Defendants. The first thing the Ketens heard that morning when Defendants came through the door was the sound of gunfire killing Kano.

10. At the same time, other Defendants entered the kitchen where three-year-old K.K.K., was eating breakfast at the kitchen table, while Mrs. Keten stood nearby. Defendant Fuchs fired multiple hollow point rounds towards the kitchen table, killing another of the family's dogs, Remy, and splattering blood all over K.K.K and the kitchen walls and floor.

11. Remy had not barked, charged or otherwise behaved aggressively towards the Defendants before she was shot dead. Defendants had a clear view of K.K.K. as she sat next to Remy at the kitchen table.

12. Defendant Fuchs was using hollow-point 9mm ammunition as he fired indiscriminately into the kitchen. One of these hollow-point rounds was lodged in the wall directly behind where K.K.K. sat, while several more entered the floor directly in front of the young girl.

13. Mrs. Keten was put in grave fear for her safety as well as that of her daughter by the actions of the Defendants. K.K.K. also feared for her own safety as well as that of her family members.

14. After killing the two dogs and nearly killing one child, Defendants began to beat Mr. Keten about his back, neck, head, and face as he lay face down on the living room floor.

15. As Defendants beat Mr. Keten while he lay compliant on the floor of his own living room, Defendants repeatedly told him to "Shut the fuck up N****r!"

16. Defendants zip-tied Mr. Keten's hands behind his back, pulled his sweatshirt over his head, and continued to beat and kick him. Mr. Keten begged Defendants to stop kicking him in the face, to which one of the Defendants replied, "We do what the fuck we want N****r," while continuing to step on Mr. Keten's face.

17. Defendants ransacked the house, destroying much of the Keten family's personal property. Defendants found no evidence of criminal activity within the house, but they did find and steal $9,400 in cash from Mr. and Mrs. Keten. Defendants did not report the seizure of this money on the receipt for the search warrant.

18. Defendants attempted to pick up most of their shell casings before they left; however, once the dust had settled and Mr. and Mrs. Keten were able to attend to their traumatized children, Mr. Keten discovered that one of his daughters had a 9mm shell casing in her mouth. He then discovered several more casings on the floor of his home.

19. Mr. Keten was treated for his injuries. K.K.K. is being counseled because of the conduct of the Defendants. Three year old K.K.K. now asks her father several times each day to make sure the door is locked.

20. The Keten family, especially K.K.K., live in a state of constant fear that Defendants will return to the house and kill them like they shot Remy and Kano. Ultimately, the Ketens moved as a result of this incident.

## COUNT 1 – FOURTH AMENDMENT VIOLATIONS OF 42 U.S.C. 1983

Plaintiffs re-allege paragraphs 1-20 and further state:

21. By entering without knocking and announcing, shooting indiscriminately into Plaintiffs' home and directly at K.K.K., by beating and kicking Mr. Keten, and by seizing $9400

in cash without a lawful purpose, Defendants acted intentionally to deprive Plaintiffs of their right to be free from excessive and unjustified deadly force. These rights are secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

22. Defendants also entered the home without a valid warrant, searched vehicles which were not named in the warrant, and stole $9,400 in cash from the Ketens, in violation of the Fourth Amendment's strictures against unreasonable searches and seizures.

23. As a direct and proximate result of Defendants' excessive use of force, Plaintiffs have suffered physical injury, pain and suffering, mental anguish and humiliation.

Plaintiffs demand relief as set forth below.

## COUNT 2 – FOURTEENTH AMENDMENT VIOLATIONS OF 42 U.S.C. 1983

Plaintiffs re-allege paragraphs 1-23 and further state:

24. By firing multiple 9mm rounds directly at K.K.K. while she ate her breakfast, Defendants engaged in conscience shocking behavior that interfered with her fundamental rights in violation of the Fourteenth Amendment.

25. As a direct and proximate result of the Defendants' conduct, which constitutes substantive due process violations, K.K.K. has been forced to endure severe mental pain and suffering for which she continues to undergo psychiatric counseling.

Plaintiffs demand relief as set forth below.

## COUNT 3 – BATTERY

Plaintiffs re-allege paragraphs 1-25 and further state:

26. By firing indiscriminately into Plaintiffs' home and beating and kicking Mr. Keten while he was compliant, Defendants used more physical force than was reasonable and necessary

under the circumstances. Such unwanted contact and excessive force constitutes common law battery.

27. As a direct and proximate result of Defendants' battery, Plaintiffs suffered physical injury, pain and suffering, mental anguish and humiliation.

28. Defendant City of Minneapolis is jointly and severally liable for the actions of the police officers under the doctrines of agency and *respondeat superior*.

Plaintiffs demand relief as set forth below.

## COUNT 4 – ASSAULT

Plaintiffs re-allege paragraphs 1-28 and further state:

29. Defendants, by their unwarranted shooting into Plaintiffs' home and their beating of Mr. Keten, caused Plaintiffs to be in reasonable fear of imminent great bodily harm and death. These actions and the display of force by Defendants constitute common law assault.

30. As a direct and proximate result of Defendants' illegal entry, assault, and battery, Plaintiffs suffered physical injury, pain and suffering, mental anguish and humiliation.

31. Defendant City of Minneapolis is jointly and severally liable for the actions of the police officers under the doctrines of agency and *respondeat superior*.

Plaintiffs demand relief as set forth below.

## COUNT 5 – CONVERSION

Plaintiffs re-allege paragraphs 1-31 and further state:

32. By stealing $9,400 in cash from the Keten family, Defendants knowingly converted property that belonged to the Keten family.

33. This act was inconsistent with the ownership rights of the Keten family, and constituted the common law tort of conversion.

34. Defendant City of Minneapolis is jointly and severally liable for the actions of the police officers under the doctrines of agency and *respondeat superior*.

Plaintiffs demand relief as set forth below.

## COUNT 6 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-allege paragraphs 1-34 and further state:

35. The actions of the Defendants, including but not limited to, their failure to exercise due care, invaded the rights of K.K.K. and Mrs. Keten, who were placed in the zone of danger of physical impact and reasonably feared for their own safety as well as the safety of one another.

36. K.K.K. and Mrs. Keten have suffered severe mental and emotional distress with attendant physical manifestations as a result of the aforesaid shooting. Furthermore, no physical manifestation is necessary in this case because the "unusually disturbing experience" that Plaintiffs have endured assures that their emotional distress is real and severe.

37. Defendant City of Minneapolis is jointly and severally liable for the actions of the police officers under the doctrines of agency and *respondeat superior*.

Plaintiffs demand relief as set forth below.

## COUNT 7 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-allege paragraphs 1-37 and further state:

38. The extreme, outrageous, and conscience shocking actions of the Defendants in shooting directly at K.K.K. such that she was splattered with the blood of her own dog were done intentionally or recklessly and caused her severe emotional and mental distress.

39. Defendant City of Minneapolis is jointly and severally liable for the actions of the police officers under the doctrines of agency and *respondeat superior*.

Plaintiffs demand relief as set forth below.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

a. awarding Plaintiffs compensatory damages against Defendants, jointly and severally;

b. awarding Plaintiffs punitive damages against the individual Defendants, jointly and severally, on Counts 1, 2, 3, 4, 6, and 7, in an amount to be determined at trial; and

c. awarding Plaintiffs all of their costs and disbursements, including reasonable attorneys' fees as allowed by law, including 42 U.S.C. § 1988; and

d. granting such other relief as the Court may deem just and equitable; and

e. Plaintiffs demand a jury trial.

Dated: July 26, 2012.
s/ Paul Applebaum
Paul Applebaum (223098)
Andrew M. Irlbeck (392626)
First National Bank Building
332 Minnesota Street, Suite W-1610
St. Paul, Minnesota 55101
(dir) (651) 222-2999
(fax) (651) 223-5179
paulpapple@hotmail.com

*Attorneys for Plaintiffs*