| | |
|---|---|
| James Keten and Aisha Keten,<br>individually and o/b/o minor<br>child, K.K.K., | Civil No. 11-1520 (DWF/JSM) |
| Plaintiffs, | |
| v. | **MEMORANDUM<br>OPINION AND ORDER** |
| Sergeant Steven Mosey, and<br>Officers Aaron Morrison, Chad<br>Fuchs, Steven Lynch, Chris Garbisch,<br>and George Peltz, in their individual<br>and official capacities, and<br>the City of Minneapolis, | |
| Defendants. | |

Andrew M. Irlbeck, Esq., and Paul Applebaum, Esq., counsel for Plaintiffs.

Andrea Kloehn Naef, Sara J. Lathrop, Timothy S. Skarda, Assistant City Attorneys, Minneapolis City Attorney's Office, counsel for Defendants.

## INTRODUCTION

This matter is before the Court on a Motion for Partial Summary Judgment brought by Defendants City of Minneapolis (the "City"), Sergeant Steven Mosey ("Sergeant Mosey"), Officers Aaron Morrison ("Officer Morrison"), Chad Fuchs ("Officer Fuchs"), Steven Lynch ("Officer Lynch"), Chris Garbisch ("Officer Garbisch"), and George Peltz ("Officer Peltz) (together, "Defendants"). (Doc. No. 28.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The Minneapolis Police Department requested and received a warrant to search the residence of Plaintiff James Keten ("J. Keten"). (Doc. No. 33, Lynch Aff. ¶¶ 2, 4-8.) The warrant was a "knock and announce" warrant, which requires police to knock and announce their presence prior to making entry. (Doc. No. 31, Lathrop Aff. ¶ 2, Ex. 1 (Lynch Dep.) at 25.) J. Keten is the brother of Lamont Keten, an identified suspect in a shooting that occurred in a North Minneapolis home on April 3, 2011. (Lynch Aff. ¶¶ 3, 4.) The police learned that, at the time of the shooting, Lamont Keten was staying at J. Keten's home. (*Id*. ¶ 4.) The search warrant sought to recover the assault rifle used in the shooting. (*Id*.; Lynch Dep. at 17; Lathrop Aff. ¶ 3, Ex. 2 (Mosey Dep.) at 16.) During the warrant's execution, Lamont Keten remained in custody.

Sergeant Mosey led the Minneapolis Police Department Special Weapons and Tactics ("SWAT") team, which consisted in part of Defendants Sergeant Mosey and Officers Morrison, Fuchs, Garbisch, and Lynch. (Lathrop Aff. ¶ 4, Ex. 3 (Warrant Service Log).)[1] Prior to the execution of the warrant, Officer Lynch briefed the SWAT team on the context in which the warrant arose. (Lynch Dep. at 27; Lynch Aff. ¶¶ 13-14; Mosey Dep. at 16, 43.) He also informed the SWAT team that one item sought was an assault rifle used in the April 3, 2011 shooting, that small children lived at the residence

---

[1] The Warrant Service Log does not indicate that Officer Garbisch was part of the team, but the parties do not dispute that he was there.

to be searched, and that there were potentially four aggressive Pit Bull dogs at the location. (Lynch Aff. ¶¶ 13-14.)

On the morning of April 13, 2011, J. Keten, his wife Plaintiff Aisha Keten ("A. Keten"), and their two young children, K.K. (age three) and Z.K. (infant), were present in the Keten home. (Lathrop Aff. ¶ 5, Ex. 4 (J. Keten Dep.) at 23-25; Lathrop Aff. ¶ 6, Ex. 5 (A. Keten Dep.) at 27-28.) J. Keten was in the living room, K.K. was at the kitchen table eating cereal, Z.K. was sleeping in a bedroom, and A. Keten was in the bathroom getting ready for work. (*Id.*) The SWAT team arrived around 9:00 a.m. to execute a knock and announce, daytime warrant. (Lynch Dep. at 25; J. Keten Dep. at 18; A. Keten Dep. at 26.) The SWAT team entered through a slightly ajar front door, which opens directly into the living room. (Mosey Dep. at 19; Lathrop Aff. ¶ 9, Ex. 8 (Morrison Dep.) at 23.) Officer Morrison announced "Police!! Search warrant!!" (Morrison Dep. at 23.) Upon entering through the living room, Officer Morrison shot one of the Keten's dogs, a 60-pound Pit Bull-mix named "Kano." (Morrison Dep. at 23; J. Keten Dep. at 28-30.) Kano had been walking near J. Keten in the living room when the police entered. (J. Keten Dep. at 36-37.) Officer Morrison testified that the dog charged him. (Morrison Dep. at 23.) J. Keten testified that the dog was shot immediately and did not "have a chance to look" before he was shot. (J. Keten Dep. at 37.) Officers Morrison and Garbisch took J. Keten to the ground. (J. Keten Dep. at 44.) J. Keten asserts that the officers threw a pillow and sweatshirt over his head and beat him by kicking and stomping on him, and that they yelled racial slurs. (J. Keten Dep. at 44-46, 50.)

Officer Fuchs entered the home and went into the bathroom/kitchen area. (Mosey Dep. at 30.) Officer Fuchs passed A. Keten, who was getting ready for work in the bathroom, and then Officer Fuchs moved to the kitchen where K.K. was eating breakfast at the table. (A. Keten Dep. at 27-28, 148-50.) Plaintiffs allege that Officer Fuchs fired several shots into the kitchen, hitting the floor several feet in front of the table, hitting the wall behind a kitchen chair, and shooting and killing another dog, a 40-pound German Shepard and Pit Bull-mix named "Remy." (J. Keten Dep. at 77-78; Lathrop Aff. ¶ 8, Ex. 7 (K.K. Dep.) at 7-11; A. Keten Dep. at 148-49.) At the time, Remy was sitting near the feet of K.K. as she ate cereal at the kitchen table. (K.K. Dep. at 7-11; A. Keten Dep. at 148.) Due to her close proximity to Remy, blood splattered on K.K.'s pajamas. (A. Keten Dep. at 36.) K.K. did not move after the officer shot Remy, but remained motionless in her seat. (A. Keten Dep. at 148, 151.) K.K. later testified that she was afraid and thought that "[t]hey would shoot me." (K.K. Dep. at 7.)

Officer Fuchs claims that he believed the dog to be threatening, while K.K. and her mother stated that Remy did not bark or growl at the officer, but merely sat begging for K.K.'s food. (Doc. No. 39, Fuchs Decl. ¶ 4; A. Keten Dep. at 143-152.) After hearing the first round of gunfire from the living room, A. Keten attempted to rush to the kitchen to grab K.K., but officers kept her back in the bathroom. (A. Keten Dep. at 35, 37, 42, 55.)

The raid lasted less than ten minutes. (Mosey Dep. at 36.) Minneapolis Police Officers from the investigative team then entered the Keten home to conduct the search. (*Id*. at 35.) Defendants did not find a gun or any ammunition. (Irlbeck Aff. ¶ 13, Ex. 12.)

Plaintiffs assert that Defendants destroyed or damaged many family belongings, including dressers, beds, window blinds, speakers, stereo equipment, carpet, and the kitchen walls and floors. (A. Keten Dep. at 60-61.)

Plaintiffs allege that they have suffered damages as a result of the search. J. Keten claims that he has suffered a bruised back, sore neck, and emotional distress. (J. Keten Dep. at 115-16.) J. Keten went to the emergency room at North Memorial for treatment roughly twelve hours after the search, where he reported back pain and a headache. (*Id*.; Lathrop Aff. ¶ 10, Ex. 9 (J. Keten Medical Records) at 3.) At the emergency room, there were no "obvious bruises to document photographically," a spinal X-ray found "normal alignment of the lumbar spine" and "no acute fracture," and he was prescribed pain medication and told to follow up with his primary physician in one week. (*Id*. at 6-7.) A. Keten claims that her blood pressure has increased since the incident. (A. Keten Dep. at 104.) She missed work due to the incident and suffered some lost wages and bonuses. (*Id*. at 88-92.) K.K. has seen a family therapist for counseling roughly once every 30-45 days. (J. Keten Dep. at 119-20; A. Keten Dep. at 94-96.) K.K. has been diagnosed with Post-Traumatic Stress Disorder ("PTSD"). (Irlbeck Aff. ¶¶ 2, 3, Exs. 1, 2.)

In their Amended Complaint, Plaintiffs assert the following causes of action: (1) unreasonable search and seizure, including claims for excessive force against Officer Fuchs for shooting into the kitchen, and against Officers Morrison and Garbisch for use of force against J. Keten; (2) substantive due process violation against Officers Lynch, Fuchs, Garbisch, Morrison, and Sergeant Mosey, for unreasonable shooting in the kitchen; (3) battery; (4) assault; (5) conversion; (6) negligent infliction of emotional

distress; and (7) intentional infliction of emotional distress. (Doc. No. 23, Second Am. Compl.)[2] Defendants now move for partial summary judgment.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for

---

[2] Plaintiffs stipulated to voluntarily dismiss their conversion claim, as well as claims asserted against several originally named defendants. (Doc. No. 26.) The remaining claims are set forth in chart form in the parties' stipulation. (*Id.*) The Court did not include all of the facts of this case in the Background section, as some facts are only relevant to claims not presently before the Court.

summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Excessive Force Under 42 U.S.C. § 1983

Defendants argue that both K.K.'s excessive force claim against Officer Fuchs and J. Keten's excessive force claim against Officers Morrison and Garbisch fail as a matter of law.

### A. K.K.'s Claim Against Officer Fuchs

Plaintiffs assert that Officer Fuchs used excessive force when he fired his weapon into the kitchen where K.K. was eating breakfast. Defendants argue that this claim fails because in shooting the dog in the kitchen, Officer Fuchs did not seize K.K. under the Fourth Amendment.

The Fourth Amendment prohibits unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Here, Defendants argue that Plaintiffs' excessive force claim fails as a matter of law because there was no seizure of K.K. In particular, Defendants argue that an officer must have a subjective intent to seize a person to be liable for an unreasonable seizure under the Fourth Amendment. Plaintiffs assert that the excessive force claim survives summary judgment because Officer Fuchs did not act with the intent to seize the dog, but rather to seize K.K. In support, Plaintiffs submit evidence that the dog was not acting aggressively and was sitting at K.K.'s feet when Officer Fuchs shot the dog. Plaintiffs argue that because the dog was not aggressive, Officer Fuchs had no

7

legitimate reason to intend to seize the dog and that the use of force constitutes a seizure of K.K. Plaintiffs also argue that K.K. was seized for Fourth Amendment purposes because a reasonable person would have interpreted Officer Fuchs' actions as a seizure.

A Fourth Amendment seizure occurs when an officer, "by means of physical force or show of authority, terminates or restrains [an individual's] freedom of movement, *through means intentionally applied.*" *Brendlin v. Cal.,* 551 U.S. 249, 254 (2007) (internal quotations and citations omitted) (emphasis in original); *see also Gardner v. Bd. of Police Comm'rs*, 641 F.3d 947, 951 (8th Cir. 2011). Thus, an "unintended person . . . [may be] the object of the detention," so long as the detention is "willful" and not merely the consequence of "an unknowing act." *Brendlin*, 551 U.S. at 256. "The intent that counts under the Fourth Amendment is the 'intent [that] has been conveyed to the person confronted,' and the criterion of willful restriction on freedom of movement is no invitation to look to subjective intent when determining who is seized." *Id.* at 260-61 (internal citations omitted). A seizure occurs if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also California v. Hodari*, 499 U.S. 621, 628 (1991) (noting that the test in *Mendenhall* has been adopted by the Supreme Court in later cases).

Here, viewing the facts in the light most favorable to Plaintiffs, and therefore accepting that the dog in the kitchen was not acting aggressively, a reasonable juror could conclude that by firing multiple shots into the kitchen where K.K. sat, Officer Fuchs seized K.K. More specifically, a reasonable juror could conclude that Officer Fuchs

willfully fired his gun so as to make K.K. reasonably believe that she was not free to leave.

Where there has been a seizure, the Court evaluates whether an officer's actions constitute excessive force under an objective-reasonableness test. *Graham*, 460 U.S. at 397. In determining whether the use of force is "reasonable" under the Fourth Amendment, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests at stake. *Id*. at 396 (citation omitted). The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See id*. The proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The question is whether the "totality of the circumstances" justify a particular seizure. *Id*. (citing *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985)).

Here, Plaintiffs have put forth evidence that the Defendant Officers, including Officer Fuchs, entered the Keten's residence without knocking and announcing (despite executing a "knock and announce" warrant), and then fired multiple shots into a small kitchen in close proximity to where a three-year-old sat eating breakfast with her dog nearby. Again, viewing the facts in the light most favorable to Plaintiffs, and therefore

accepting that the dog in the kitchen was not acting aggressively, a reasonable juror could conclude that Officer Fuchs' actions were objectively unreasonable.[3]

### B. J. Keten's Excessive Force Claim

Defendants argue that Officers Morrison and Garbisch are entitled to summary judgment because, at the time of the incident, it was not clearly established that Officers Morrison and Garbisch violated J. Keten's constitutional right by applying force because the force only caused *de minimis* injury. In support, Defendants argue that prior to *Chambers v. Pennycook*, 641 F.3d 898, 901, 906 (8th Cir. 2011), it was not clearly established "whether an excessive force claim requires some minimum level of injury." 641 F.3d at 904, 908. Here, Plaintiffs assert that J. Keten sustained bruising to his neck and back, lasting pain in his neck, back and head, and a decreased range of motion in the lumbar region of his spine. Plaintiffs point out that J. Keten was treated at the hospital for his injuries on the day of the incident. For purposes of its qualified immunity

---

[3] Defendants also argue, in the alternative, that Officer Fuchs is entitled to qualified immunity on the excessive force claim. The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 343 (1986). To overcome the defense of qualified immunity, a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted).

As discussed above, a reasonable juror could conclude that Officer Fuchs' actions were objectively unreasonable, and therefore, that he violated K.K.'s Fourth Amendment rights. In addition, the Court concludes that these rights were clearly established at the time of the deprivation. Thus, Officer Fuchs is not entitled to qualified immunity.

analysis, the Court concludes that this injury is not *de minimis* as a matter of law. *See*, *e.g.*, *Copeland v. Locke*, 613 F.3d 875, 881-82 (8th Cir. 2010) (finding lacerations from handcuffs and an injury to the knee not *de minimis*). Plaintiffs have pointed to sufficient evidence of actual injury to overcome Defendants' assertions of qualified immunity.

## III. Substantive Due Process

Plaintiffs also assert a Fourteenth Amendment substantive due process claim against Officers Lynch, Fuchs, Garbisch, Morrison, and Sergeant Mosey. Specifically, Plaintiffs allege that by firing multiple rounds directly into the kitchen while K.K. ate her breakfast, Defendants engaged in "conscience-shocking" behavior. (Sec. Am. Compl. ¶ 24.) Defendants move for summary judgment on this claim, arguing that: (1) Officer Fuchs was not inspired by malice or sadism when he shot the dog in the kitchen; and (2) Officers Lynch, Garbisch, Morrison, and Mosey did not fire their weapons into the kitchen.[4]

Plaintiffs do not dispute that it was Officer Fuchs who fired his weapon into the kitchen. Because there is no evidence that Officers Lynch, Garbisch, Morrison, or Sergeant Mosey fired their weapons near K.K., Plaintiffs' substantive due process claim against them fails as a matter of law.

---

[4] To establish a substantive due process violation, K.K. must show that Defendants' conduct: (1) was "conscience shocking"; and (2) violated "one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Terrell v. Larson*, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (quotations omitted).

11

Plaintiffs' substantive due process claim, as it is asserted against Officer Fuchs, is based on the same facts that support Plaintiffs' Fourth Amendment excessive force claim against Officer Fuchs.  Excessive force claims must be analyzed under the Fourth Amendment's "objective reasonableness standard."  *Graham*, 490 U.S. at 395 (holding that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach") (emphasis in original).  Therefore, Plaintiffs cannot base their substantive due process claim on their alleged excessive-force claims, and Plaintiffs' substantive due process claim, as asserted against Officer Fuchs, fails as a matter of law.  *See, e.g*, *Smithson v. Aldrich*, 235 F.3d 1058, 1064 (8th Cir. 2000).

Accordingly, Defendants are entitled to summary judgment on Plaintiffs' substantive due process claim.

## IV. Negligent and Intentional Infliction of Emotional Distress

K.K. asserts a claim for intentional infliction of emotional distress ("IIED"); and both K.K. and A. Keten assert claims for negligent infliction of emotional distress ("NIED").

Under Minnesota law, there are four elements for an IIED claim:  (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe.  *Hubbard v. United Press Int'l, Inc*., 330 N.W.2d 428, 438-39 (Minn. 1983) (citing Restatement (Second) of Torts § 46(1) (1965)).

To establish a claim for NIED under Minnesota law, a plaintiff must prove the four elements of a negligence claim-duty, breach, injury, and causation. *Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005). In addition, a plaintiff claiming NIED must establish that he or she: (1) was within a zone of danger of physical impact; (2) reasonably feared for his or her own safety; and (3) suffered severe emotional distress with attendant physical manifestations. *Id*. The physical manifestation requirement "is designed to assure the genuineness of the emotional distress." *Silberstein v. Cordie*, 474 N.W.2d 850, 857 (Minn. Ct. App.1991).

### A. K.K.'s Claims

K.K. asserts a NIED claim against Officers Fuchs, Morrison, Garbisch, Lynch, Sergeant Mosey, and the City of Minneapolis. Defendants assert that they are entitled to summary judgment on this claim because K.K. has not presented evidence of an "attendant physical manifestation." Plaintiffs dispute Defendants' argument and assert that there is evidence in the record that K.K. has somatization, which could be directly related to symptoms of PTSD. (Irbeck Aff. ¶ 3, Ex. 2 at 6.) Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that there are genuine issues of material fact with respect to whether Plaintiffs have established the necessary element of an attendant physical manifestation of severe emotional distress. Given this, the Court denies Defendants' motion with respect to the K.K.'s NIED claim.

K.K. also asserts a claim for IIED against Officers Fuchs, Garbisch, Morrison, Lynch, Sergeant Mosey, and the City of Minneapolis. Defendants move for summary judgment insofar as the claims are asserted against Officers Garbisch, Morrison, Lynch

and Sergeant Mosey. Specifically, Defendants argue that there is no evidence that these officers intended to cause K.K. severe emotional distress, or that they proceeded with the knowledge that it was substantially certain, or highly probable, that severe emotional distress would occur. In support, Defendants point out that Officers Garbisch, Morrison, Lynch, and Sergeant Mosey did not fire their weapons into the kitchen. The Court agrees and concludes that Officers Garbisch, Morrison, Lynch, and Sergeant Mosey are entitled to summary judgment on K.K.'s IIED claim.

### B. A. Keten's Claim

A. Keten also asserts a NIED claim against Officers Fuchs, Garbisch, Morrison, Lynch, Sergeant Mosey, and the City of Minneapolis for the allegedly unreasonable shooting in the kitchen and the alleged use of excessive force on J. Keten. A plaintiff may recover damages for distress caused by fearing for another person's safety or by witnessing serious injury to another person if the plaintiff can show: (1) she was in the zone of danger of physical impact; (2) she had an objectively reasonable fear for her own safety; (3) she had severe emotional distress with attendant physical manifestations; and (4) she stands in a close relationship to the third-party victim. *Engler*, 706 N.W.2d at 700-71. In addition, the plaintiff must show that the negligent conduct caused serious bodily injury to the third-party victim. *Id.*

Defendants argue that this claim fails because A. Keten was not in the zone of danger, cannot establish that she had an objectively reasonable fear for her own safety, and because neither J. Keten nor K.K. suffered "serious bodily injury." With respect to the issue of whether there was a "serious bodily injury" to either K.K. or J. Keten,

14

Plaintiffs respond that K.K. suffers from PTSD with somatization and J. Keten suffered "actual injury." Even accepting these assertions as true, Plaintiffs have not made any compelling argument or showing that either of these injuries constitutes "serious bodily injury." Accordingly, Defendants are entitled to summary judgment on A. Keten's claim for NIED.

## CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. No. [28]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Count Two (Substantive Due Process) of Plaintiffs' Second Amended Complaint (Doc. No. [23]) is **DISMISSED WITH PREJUDICE**.

2. Count Six (Intentional Infliction of Emotional Distress) of Plaintiffs' Second Amended Complaint (Doc. No. [23]) is **DISMISSED WITH PREJUDICE** insofar as it is asserted against Officers Garbisch, Morrison, Lynch, and Sergeant Mosey.

3. Count Six (Negligent Infliction of Emotional Distress) of Plaintiffs' Second Amended Complaint (Doc. No. [23]) is **DISMISSED WITH PREJUDICE** insofar as it is asserted by Aisha Keten.

4. All other disputed claims remain for trial.

Dated: March 8, 2013         s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge